IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 8, 2001 Session

**IN THE MATTER OF: DAKOTA JEAN HOOVER-CRAWFORD,
COLTON RAY THOMAS & DUSTY BRANDON THOMAS
STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
NIKI LYNN CRAWFORD THOMAS**

**Direct Appeal from the Juvenile Court for Cannon County
No. 847; The Honorable John B. Melton, III, Judge**

---

**No. M2000-01655-COA-R3-CV - Filed July 27, 2001**

---

This is a suit for the termination of parental rights. The Appellee filed a petition to terminate the Appellant's parental rights to three of her minor children. Following a hearing, the Juvenile Court of Cannon County entered an order terminating the Appellant's parental rights. The Appellant appeals the trial court's order terminating her parental rights. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Adam T. Dodd, Murfreesboro, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Elizabeth C. Driver, Assistant Attorney General, for Appellee

Susan G. Cox, Murfreesboro, TN, Guardian Ad Litem

**OPINION**

**I. Facts and Procedural History**

The Appellant, Niki Lynn Crawford Thomas ("Ms. Thomas"), has three minor children, Dakota Jean Hoover Crawford (d.o.b. May 29, 1992), Colton Ray Thomas (d.o.b. March 29, 1995),

and Dusty Brandon Thomas (d.o.b. August 26, 1996) ("the children").[1]  On September 19, 1997, the Appellee, State of Tennessee Department of Children's Services ("DCS"), received a referral that the children were being cared for by an eighteen year old half sister.  Upon investigation, DCS found the children alone in a filthy house.  The family was in the process of being evicted, the water and electricity had been turned off, and there was little means of support.  DCS also noted that Ms. Thomas had a history of drug use and prostitution.

On September 25, 1997, DCS filed a petition in the Juvenile Court of Cannon County for temporary custody of the children. On September 29, 1997, the trial court issued a protective custody order placing the children in foster care with DCS.  The children were ill when they were brought into protective custody, and Dusty had not been treated for a broken leg.  On October 7, 1997, Ms. Thomas and her husband, Les Thomas ("Mr. Thomas"),[2] pro se, signed a consent decree ordering DCS to retain temporary custody of the children.   The parties waived the preliminary and adjudicatory hearings, and the consent decree was entered *nunc pro tunc* September 29, 1997.

On October 9, 1997, a staffing was held to develop a plan of care for the children ("1997 plan of care").  Despite verbal and written notice provided by DCS, Ms. Thomas was not present for the staffing.  A DCS caseworker discussed the plan of care with Ms. Thomas, and Ms. Thomas signed the plan of care on February 6, 1998.  DCS provided Ms. Thomas with a packet of written materials explaining the grounds for termination of parental rights.  A review hearing to assess compliance with the plan of care was held on September 29, 1998.  Ms. Thomas appeared pro se at the hearing. The trial court found that Ms. Thomas was not in compliance with the statement of responsibilities of the plan of care "in that she has not completed individual counseling to address family and individual mental health issues, parenting training approved by Department of Children's Services, established nor maintained housing for the children, provided verification of financial circumstances, A & D evaluation/recommendation nor enrolled or attended AA/NA."  The trial court ordered the children to remain in foster care.

On October 13, 1998, a staffing was conducted to formulate another plan of care for the children ("1998 plan of care").  The 1998 plan of care imposed the following requirements upon Ms. Thomas:

> 1. Ms. Thomas will participate in treatment that may include the following: detox, inpatient, outpatient, group, individual, and family counseling.
> 2. Ms. Thomas will enroll in a twelve step N/A program, obtain a sponsor, and attend ninety meetings in ninety days. Ms. Thomas must provide written verification of attendance to all meetings.
> 3. Ms. Thomas will remain free of all opiates and mood-altering substances for a minimum of six months.

---

[1]  Ms. Thomas gave birth to a fourth minor child, Jessie Gwen Thomas, on November 4, 1997.

[2]  Mr. Thomas is the father of Colton and Dusty.  The father of Dakota is unknown.

4. Ms. Thomas will submit to random drug screens.

5. Ms. Thomas will secure and maintain suitable/safe housing with adequate furnishings and room space for herself and the children. Ms. Thomas will locate available day care and obtain as necessary for care of the children.

6. Ms. Thomas will secure and maintain legal financial support for herself and the children.

7. Ms. Thomas will obtain a parenting assessment by a DCS approved counselor to identify strengths and areas of concern. Ms. Thomas will follow recommendations.

8. Ms. Thomas will complete individual counseling by a licensed and approved DCS counselor to address her own victimization, marriage conflicts, communication, separation, and loss issues.

9. Ms. Thomas, if she continues to make Mr. Les Thomas a part of her life, will assume responsibility for getting him to cooperate with taking the recommended psycho-sexual evaluation and follow recommendations.

10. Ms. Thomas will keep DCS/HCCM informed of any changes in status or locations. Ms. Thomas will sign/update Release of Information as requested.

11. Ms. Thomas will cooperate with DCS in obtaining permanency for her children by diligently working her plan of care to achieve reunification or cooperating with giving custody of children to an appropriate relative resource or making children available for adoption by surrender of parental rights or termination of parental rights through the court.

12. Ms. Thomas will visit with the children in a supervised setting a minimum of four hours per month to demonstrate parenting skills and spend quality time with the children. Ms. Thomas will not discuss a potential return home with the children or make related promises.

Ms. Thomas was present at the staffing, but she refused to sign the 1998 plan of care. On December 9, 1998, DCS filed a motion for ratification of the 1998 plan of care. A ratification hearing was held in December, 1998. On December 22, 1998, the trial court found the 1998 plan of care to be in the children's best interest and ordered that the 1998 plan of care be ratified. On February 2, 1999, the trial court ordered the children to remain in foster care until there was strict compliance with the 1998 plan of care *nunc pro tunc* December 22, 1998.

On June 29, 1999, DCS filed a petition for termination of parental rights. The petition alleged that parental rights should be terminated based on abandonment, substantial noncompliance with the plan of care, and failure to correct the circumstances, conduct, or conditions which led to the children's removal. The trial court appointed counsel to represent Ms. Thomas and appointed a guardian ad litem to represent the children in the petition. On February 15, 2000, Ms. Thomas filed a petition for custody. Ms. Thomas claimed that she had substantially complied with the plan of care.

The hearing on the petition for termination of parental rights was held on February 22, 2000. Donna Nichols ("Ms. Nichols") testified that she was the DCS case worker assigned to Ms. Thomas'

family since the children first entered state custody. Ms. Nichols testified that Ms. Thomas had visited with the children on February 18, 2000. The previous two documented visits occurred on February 23, 1999 and for two hours on May 20, 1999. Ms. Nichols also testified that Ms. Thomas had failed to provide any child support while the children were in state custody. Finally, Ms. Nichols testified that Ms. Thomas had failed to substantially comply with the 1998 plan of care. Specifically, Ms. Thomas had failed to provide verification that she attended or completed N/A, failed to provide verification that she had remained free of mood-altering drugs for six months, refused two random drug screens, failed to consistently keep DCS informed of her status and location, failed to obtain a parenting assessment, failed to attend and complete individual counseling by a DCS approved counselor, and failed to take responsibility for ensuring that Mr. Thomas underwent a psycho-sexual evaluation.

Ms. Thomas testified that she currently lives in a three bedroom trailer in California and works two jobs. Ms. Thomas testified that she underwent drug treatment and individual counseling at a methadone treatment facility in Nashville beginning on February 13, 1998. She testified that she left the clinic in December, 1998 because DCS wanted her off all mood-altering substances. Ms. Thomas testified that she received treatment from another methadone clinic after she moved to California in May, 1999. Ms. Thomas testified that she was unable to visit her children from February 23, 1999 until May 20, 1999 due to lack of transportation and being hospitalized. Ms. Thomas admitted that, with the exception of birthday and Christmas gifts, she failed to pay child support while the children were in state custody. Ms. Thomas claimed that she was unaware of her obligation to pay child support. Ms. Thomas testified that she completed parenting classes; however, she admitted that she failed to complete a parenting assessment. Finally, Ms. Thomas testified that, with the exception of a post office box, she never informed DCS of her street address in California. Ms. Thomas could not remember whether she informed DCS of her employment or methadone treatment in California.

On June 20, 2000, the trial court issued a final decree of guardianship entered *nunc pro tunc* February 22, 2000. The trial court stated that "[u]pon the evidence presented, arguments of counsel, and the entire record, the Court finds that upon clear and convincing evidence, the Petition to Terminate Parental Rights of the Defendant . . . is well taken and should be sustained and relief granted thereunder."[3] Specifically, the trial court found that, for a period of four months preceding the filing of the petition, Ms. Thomas willfully failed to visit with the children or only engaged in token visitation; Ms. Thomas failed to financially contribute to the children's support since September 25, 1997; and Ms. Thomas failed to substantially comply with the 1998 plan of care. The trial court further found that it was in the children's best interest that Ms. Thomas' parental rights be terminated. This appeal followed.

---

[3] The parental rights of Mr. Thomas were terminated by default order entered June 20, 2000 *nunc pro tunc* February 22, 2000. Mr. Thomas is not a party to this appeal.

## II. Standard of Review

Parents have a fundamental right to the care, custody, and control of their children. See Stanley v. Illinois, 405 U.S. 645, 651 (1972). This right is not absolute, however, and parental rights may be terminated upon a finding by clear and convincing evidence that the grounds for termination of parental rights have been established and that termination is in the best interests of the child. See TENN. CODE ANN. § 36-1- 113(c) (2000). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence. It should produce in the factfinder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established" O'Daniel v. Messier, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995) (citations omitted).

Under this heightened standard of review, we must first review the trial court's findings in accordance with section 13(d) of the Tennessee Rules of Appellate Procedure. That review is *de novo* with a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). We must then determine whether the facts make out a clear and convincing case in favor of terminating parental rights. See In re Drinnon, 776 S.W.2d 96, 100 (Tenn. Ct. App. 1988).

## III. Law and Analysis

The following issues, as we perceive them, are presented for our review:

1) Whether Ms. Thomas' due process rights were violated by the trial court's failure to appoint counsel for the initial dependency and neglect proceeding and the review hearing in September, 1998;
2) Whether Ms. Thomas knowingly and voluntarily waived her right to a preliminary and adjudicatory hearing on the dependency and neglect petition in accordance with Rule 16(b) of the Tennessee Rules of Juvenile Procedure; and
3) Whether the trial court's decision to terminate parental rights was supported by clear and convincing evidence.
We will examine each issue in turn.

### Procedural Issues

Ms. Thomas argues that her due process rights were violated by the trial court's failure to appoint counsel for the initial dependency and neglect proceeding and the review hearing in September, 1998. Ms. Thomas also argues that she failed knowingly and voluntarily to waive her right to a preliminary and adjudicatory hearing on the dependency and neglect petition in accordance with Rule 16(b) of the Tennessee Rules of Juvenile Procedure. Ms. Thomas does not challenge the procedural protections she was afforded at the termination hearing.

In State of Tennessee v. Wilkerson, No. 03A01-9810-JV-00341, 1999 WL 775759, at *1 (Tenn. Ct. App. Sept. 15, 1999), the Tennessee Court of Appeals addressed the issue of whether an initial lack of due process in a dependency and neglect proceeding was remedied by the full procedural protections afforded at a termination proceeding. The appellant, Wilkerson, appealed the trial court's decision terminating his parental rights. See id. Wilkerson was afforded full procedural protection at the termination proceeding. See id. at *2. Wilkerson argued that he failed to receive proper notice of the dependency and neglect proceeding and was thus denied his due process rights. See id. The court rejected Wilkerson's argument, stating:

> Wilkerson asserted his plenary rights at the termination hearing, and any initial lack of due process was remedied by the full procedural protections afforded to Wilkerson at the termination hearing. "[E]ven if it can be said that the appellant was deprived of due process in the 'dependency and neglect' proceeding in the Juvenile Court, there is no claim of such deprivation in the . . . action to terminate parental rights."

Id. (quoting Tennessee Dep't of Human Servs. v. Grove, 1989 WL 3137, at *3 (Tenn. Ct. App. Jan. 20, 1989)). Thus, the court held that the trial court's decision should not be reversed for any deprivation of due process that occurred at an initial dependency and neglect proceeding when Wilkerson was afforded full procedural protection at the termination proceeding.

In the case at bar, Ms. Thomas does not dispute that she was afforded full procedural protection at the termination proceeding upon which this appeal is based. Rather, Ms. Thomas argues a lack of due process and violation of the Tennessee Rules of Juvenile Procedure at the dependency and neglect hearing and the review hearing in September, 1998. Ms. Thomas' argument concerning any initial proceedings fails to establish a basis to overturn the trial court's decision following the termination proceeding. Ms. Thomas received full procedural protection at the termination proceeding. Ms. Thomas received notice of the termination proceeding. She was informed of her right to counsel and was appointed counsel. The termination proceeding was rescheduled at Ms. Thomas' request. Finally, she was present and testified at the termination proceeding and had the full assistance of counsel. In accordance with Wilkerson, we find that any lack of due process or violation of the Tennessee Rules of Juvenile Procedure that may have occurred at any initial proceeding was remedied by the full procedural protection Ms. Thomas received at the termination proceeding. Accordingly, we find Ms. Thomas' issues concerning lack of due process and violation of the Tennessee Rules of Juvenile Procedure to be without merit.

**Termination of Parental Rights**

Ms. Thomas argues that the trial court's decision to terminate parental rights was not supported by clear and convincing evidence. Specifically, Ms. Thomas argues that the trial court erred by finding that DCS established grounds for termination of parental rights by clear and

convincing evidence based upon abandonment and substantial noncompliance with the plan of care.

In order to terminate parental rights, the court must find by clear and convincing evidence that grounds for termination, as set forth by section 36-1-113(g) of the Tennessee Code, have been established, and the court must determine that termination is in the best interests of the child. See TENN. CODE ANN. § 36-1-113(c) (2000). As pertinent in the case at bar, section 36-1-113(g) of the Tennessee Code provides that a termination of parental rights may be based upon any of the following grounds: abandonment by the parent or guardian, as defined in section 36-1-102 of the Tennessee Code, or substantial noncompliance by the parent with the statement of responsibilities in a plan of care. See TENN. CODE ANN. § 36-1-113(g)(1), (2) (2000). In reviewing termination decisions, Tennessee courts have recognized that the existence of any one of these grounds will support a termination of parental rights. See In re C.W.W., N.W.W., Z.W.W., & A.L.W., 37 S.W.3d 467, 473-74 (Tenn. Ct. App. 2000) (citations omitted). In the present case, therefore, we must affirm the trial court's judgment terminating Ms. Thomas' parental rights if the record contains clear and convincing evidence to support either abandonment or substantial noncompliance with the plan of care. See id. We shall address each of these grounds for termination in turn.

**Abandonment**

Section 36-1-102 defines abandonment, for purposes of terminating parental rights, as:

> (1)(A)(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
> (B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
>
> (C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;
>
> (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of

four (4) consecutive months, no monetary support was paid
or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to
visit" means the willful failure, for a period of four (4)
consecutive months, to visit or engage in more than token
visitation.

TENN. CODE ANN. § 36-1-102(1)(A)-(E) (2000).

In In re Swanson, 2 S.W.3d 180 (Tenn. 1999), the Tennessee Supreme Court found the above definitions of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" to be unconstitutional because they "in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional." Id. at 188. The Swanson court held that the definition as it existed under the prior statute should be applied until the legislature amends the statute. See id. at 189. "Under the prior statute, the definition of 'abandoned child' contained an element of intent both in failures to visit and failures to support." Id. at 189 n.14 (citing TENN. CODE ANN. § 36-1-102(1)(A)(i) (Supp. 1994)).

The trial court found that Ms. Thomas abandoned the children in that, for a period of four consecutive months prior to filing the petition to terminate parental rights, she failed to visit the children or only engaged in token visitation. The petition for termination of parental rights was filed on June 29, 1999. During the four months immediately preceding the filing of the petition, Ms. Thomas visited the children on one occasion, May 20, 1999, for two hours. Ms. Thomas testified that she was hospitalized from March 26 to April 29, 1999. DCS failed to present any evidence controverting Ms. Thomas' testimony. We cannot say that, during the approximately one month period that Ms. Thomas was hospitalized, this constituted an intent to abandon the children. Because Ms. Thomas did not intend to abandon the children during one month of the four months immediately preceding the filing of the petition, DCS failed to establish abandonment under the standard articulated by the Swanson court. Accordingly, we find that the trial court erred by finding that Ms. Thomas abandoned the children for failure to visit the children during the four months immediately preceding the filing of the petition to terminate parental rights.

The trial court also found that Ms. Thomas abandoned the children in that she failed to contribute to the support of the children from the time they entered state custody. With the exception of birthday gifts, Christmas gifts, and lunches during visitation times, Ms. Thomas failed to contribute any child support. Ms. Thomas argues that failure to pay child support did not constitute abandonment because DCS never informed her of her obligation to pay child support. Ms. Thomas argues that she could not have acted intentionally in failing to support the children because she was unaware of her obligation. We disagree. DCS provided Ms. Thomas with written information explaining that her parental rights could be terminated for failure to pay child support. Ms. Thomas signed the 1997 plan of care indicating she had received a copy of procedures for termination of

parental rights and was given an explanation of its contents. We find that Ms. Thomas was aware of her obligation to pay child support. Because she intentionally failed to pay child support the entire time the children were in state custody, we find that Ms. Thomas abandoned the children. Accordingly, we find that the trial court did not err by finding by clear and convincing evidence that Ms. Thomas abandoned the children for failure to pay child support while the children were in state custody.

## Substantial Noncompliance with Plan of Care

The trial court also found that Ms. Thomas failed to substantially comply with the statement of responsibilities in the 1998 plan of care. The plan of care required Ms. Thomas to enroll in a twelve step N/A program, obtain a sponsor, and attend ninety meetings in ninety days. Ms. Thomas failed to enroll in a N/A program. The plan of care required Ms. Thomas to remain free of all opiate and mood-altering substances for a minimum of six months. Ms. Thomas failed to provide verification that she remained free of all opiate and mood-altering substances for a minimum of six months. The plan of care required Ms. Thomas to submit to random drug screens. Ms. Thomas refused random drug screens on two separate occasions. The plan of care required Ms. Thomas to obtain a parenting assessment by a DCS approved counselor. Ms. Thomas failed to obtain a parenting assessment. The plan of care required Ms. Thomas to obtain individual counseling by a DCS approved counselor. Ms. Thomas failed to obtain individual counseling by a DCS approved counselor. The plan of care required Ms. Thomas to assume responsibility for ensuring that Mr. Thomas underwent a psycho-sexual evaluation. Mr. Thomas never underwent a psycho-sexual evaluation. The plan of care required Ms. Thomas to keep DCS informed of any changes in status or locations. Ms. Thomas failed to consistently keep DCS informed of her status and location. The plan of care required Ms. Thomas to visit with the children a minimum of four hours per month. Ms. Thomas failed to meet this visitation requirement during several months. The record in this case clearly demonstrates that Ms. Thomas failed to substantially comply with the 1998 plan of care. Accordingly, we find that the trial court did not err by finding by clear and convincing evidence that Ms. Thomas substantially failed to comply with the plan of care.

Termination of Ms. Thomas' parental rights is warranted under either the ground of abandonment for failure to support or the ground of substantial noncompliance with the plan of care. Furthermore, we find that the trial court did not err by finding by clear and convincing evidence that termination of Ms. Thomas' parental rights is in the children's best interests.

## IV.  Conclusion

For the foregoing reasons, the decision of the trial court is affirmed.  Costs of this appeal are taxed against the Appellant, Niki Lynn Crawford Thomas, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE